Good morning. Good morning. You may begin. Thank you. May it please the Court, my name is Marvin Laws on behalf of the appellant, Todd Construction. I know you've read the briefs, so I'll get right to the point. A lot has been said about the harm suffered by Todd, the contractor in this case. What is the harm? What is the connection between the harm suffered by Todd and Todd's suit allegations? The unsatisfactory performance ratings given by the government, those ratings themselves, Your Honors, are the harm. Let me ask you a different, sort of a different related question. What kind of declaratory relief were you seeking here? Well, initially, Your Honor, we believed that the trial court had jurisdiction to render injunctive relief, to actually issue instructions back to the trial court, or excuse me, back to the agency to have them withdraw what we believe are the erroneous performance evaluations. Okay, let's assume. But the trial court declined to exercise that jurisdiction and instead said, well, I have the power to review the case and then issue just and proper, remand the decision back to the agency with just and proper directives, basically saying that if I find that the decision was arbitrary and capricious, if it was not supported by the facts, then the trial court can then go back to the agency with a proper remand order and say, look, these are the areas where we think you got it wrong. That's not to say that they can, that the trial court would be able to essentially tell the agency what to do, in other words, remove the erroneous performance evaluation. But they can send it back with enough descriptions of where the procedures failed, where the facts do not warrant the ratings given, so that the government, the agency, can take appropriate action. And we believe that... So I'm having trouble envisioning this order. I mean, so you think it's in the nature of declaratory relief to tell the agency below, do this over, because some of it may have been wrong? Is that what you were seeking in terms of the declaratory relief? Well, I think so, Your Honor. I'll give you an example. Again, our complaint revolves primarily in the administrative law and under the Administrative Procedures Act, the guidance, the Scanwell line of cases. And those cases say that we're... You're in the wrong court for that, right? I'm sorry? You're in the wrong court for that, right? Well, yes and no. The trial... Well, this is not an APA action before us. It is not brought under the APA. That is correct. Under the Contract Disputes Act, right? That is correct, Your Honor. And that's because here we have two express contracts between the private party, the contractor Todd, and the government. If we didn't have that and all we were talking about, the only thing at issue, was that the government had violated or alleged to have violated its own rules and procedures and so forth, then it would be solely brought under the APA. But just to back up a moment, I mean, the standard here under the CDA is related to the contract. I'm sorry, what was that? The standard under the CDA is related to the contract, right? Arising under or related to the contract. Right. Yes, Your Honor. So the question is whether this is related to the contract. This is not based on any contract provision. What it's based on, it's an evaluation based on performance under the contract, right? Yes, Your Honor. Okay. So the question is, does the decision of the contracting officer relate to the contract where it's dealing with an action taken because of contract performance but unrelated to any terms of the contract itself? I understand, Your Honor. I think because the actions, the performance evaluations are rendered in connection with those express contracts, it certainly relates to the contract. And whether or not there exists a specific provision is irrelevant. There are those lines of cases that say the regulations have the full force and effect of law and the regulations being the procurement regulations, the Federal Acquisition Regulation in this case, which nobody disagrees governed the solicitation and the performance of these particular contracts. So I believe clearly as stated in the FAR, we have asserted a claim which not only arises under but relates to the contracts at issue. I mean, they— It doesn't arise under, right? Excuse me? It does not arise under the contract. It does not arise under—well, actually, Your Honor, we don't know the answer to that question. We don't know it? Well, there's no evidence before the Court that there is no specific reference to the applicable FAR provision. We didn't allege that there was. So we have to deal with related— I'll give you that, Your Honor. Okay. Getting back to your other question, though, Judge Prost, I want to give you a few examples of where if we had been allowed to present a fully developed record for decision by the Court, which we were not allowed to do—remember, this was a motion to dismiss—we would have shown—and the record reference is just for your reference, Your Honors—if you look at JA049, there's a summary of some of the things that Todd alleged that never occurred, yet those things were found in the performance evaluations. I'll give you an example. The government alleged— Well, let me ask you about that. Is your view that under what the Court of Federal Claims said here, that at least with respect to the so-called non-procedural aspects, you could refile, right? I mean, he just said you failed to state a claim. In other words, there weren't sufficient allegations with respect to your claim. Is that the way you read it, or did you read it as foreclosing any other action on your part? Rightly or wrongly, Your Honor, I read it as foreclosing any right to proceed. I don't think you can file again under the same theory. It doesn't matter. I raised you to comment. I think you'd be dead. I agree. I'm sure the government agrees with that. I'm sure the government agrees with that. But it strikes me that there are two separate allegations here. One is inadequate supervision of the subcontractor, and there's a question as to whether the allegations of the complaint were sufficient to make that out. And then there's the question of delay, and your allegation is the government was responsible for the delay for a number of reasons. Suppose we were to say, okay, this performance evaluation is incorrect about the delay, but it's correct or not shown to be incorrect with respect to the supervision issue. Is there some relief here that can have any benefit to you? In other words, what's done with these performance evaluations? Is the fact that it's a negative evaluation on one ground sufficient to affect you in Does it do you any good to correct an aspect of the performance evaluation which is wrong if you still have an adverse performance evaluation? You understand what I'm saying? Yes, Your Honor. And with all due respect, I think the trial court had the same type of question in mind, which I believe is the wrong question. You're basically asking, well, what if we find over here that the contractor is right in certain respects, but over here, not necessarily right? Those are the merits of the case. No, no, but I'm going to answer my question. I'm asking what happens to these performance evaluations? Is it an off-on switch? If you have a bad performance evaluation, does that mean you don't get future contracts? Or is there an examination in future contract context as to what the actual problems were that led to the bad performance evaluation? You understand what I'm saying? Yes, Your Honor. And that is the root of this case. There is no procedure in place to challenge what happens, but I want to know what happens. Mechanically, Your Honor, what happens is, is unsatisfactory performance evaluations or any performance evaluation for that matter. They're rendered by the government. They're supposed to go through a procedure to ensure the fairness and accuracy, so on and so forth. And then those performance evaluations are entered into a federal database. I think it's now called PEPERS, I forget what the acronym is. Okay, so what use is made of them? Well, the use that is made of it is for contracting officers across the country to decide whether or not to award contracts to contractors based on, in part, past performance. But if you submitted a bid on a future contract and the government rejected that bid saying that, well, based on your past performance as reflected in this database, we don't think that you should get this contract, would you not have the opportunity to challenge that at that time? Well, gosh, Your Honor, I don't think so. I think if you look at at least the regulations that we are challenging, they provide somewhat of a procedure for the contractor to appeal that decision. And I believe that if a contractor does not timely pursue that appeal and go through the complaint known, where you request a final decision, where you achieve a final decision from the contracting officer, where you don't do those things, you lose your right to appeal under the FAR. And so I think if a contractor, feeling that he is aggrieved by a negative performance evaluation on a particular contract and does not immediately say, wait, this is wrong, you have facts in your performance evaluation which never occurred. You have unfairly weighed the facts for certain elements by not taking into account your own wrongful performance or for issues, for example, differing site conditions, which made it impossible for us to perform. We are not deserving of these negative performance evaluations. If the contractor does not raise those issues, he loses his right to challenge. The question is, in this database, which is used by, with respect to future contracts, what does the database show? Does it show the actual performance evaluation in its entirety or does it just show that there was an adverse performance evaluation? My understanding, Your Honor, is that it shows, that it is supposed to show, the actual performance evaluation. It will show the criteria. So the document that we have here is itself available to future contracting officers? Not yet, Your Honor. Not yet? It was originally posted into the federal database improperly before the contractor was given a right. I'm talking about in general, not this one. In general, the actual form that we have here. You cannot judge. I apologize. I misunderstood your question. You cannot do that. Well, you might. You're a judge. No, no, no. The contracting officer. The contracting officer. I want to know what the contracting officer in the future contracts has available to him. Does he get to see the whole form or does he just see that there's a notation, adverse performance evaluation? My understanding is that he is supposed to be able to see the entire performance evaluation. Okay. You're into your rebuttal. Would you like to reserve time? I would like to reserve my time, Your Honor. All right. Very good. Let's hear from Mr. Solemson. Good morning, Your Honor. Can you begin by addressing Judge Dyke's concern about what is it that's in the database that future contracting officers see? My understanding, Your Honor, is that it is the exact copy of the performance evaluation which accompanied by the performance evaluation actually includes whatever comments the contractors wish to include themselves. So that is- But on Judge Lynn's other point, there's no opportunity for someone, the contractor, to At the juncture that the performance evaluation- On a new contract. On a new contract. Yeah. No. Under this court's precedent in a case called Banham, one cannot challenge the substance of the performance evaluation as part of a bid protest. So ordinarily, the answer would be no. But what the contractor has the ability to do under the terms of the regulation is to include all of their own comments. And that is what makes the evaluation inherently accurate and fair, is that whatever the contractor perceives as being left out, the contractor is free to include whatever commentary and details the contractor wishes. So you're saying that if a government evaluation is inaccurate and unfair, everything is fine if the contractor has a chance to add his own statement to that effect? That is one way by which the evaluation is, by definition, accurate and fair. It's that everyone has the opportunity to put in their own comments into the performance evaluation. Well, come on. I mean, there must be some remedy for a contractor if the performance evaluation is arbitrary and capricious. The question is, if it's arbitrary and capricious, is the remedy in district court under the Contract Disputes Act, right? If there is a remedy, our view is that it would be under the APA in district court, assuming all the parameters of the APA can otherwise be satisfied by the contractor there. Why isn't this related, the contracting officer decision related to the contract? I know you rely on a couple of cases about debarment, but the debarment, as I understand it, is not a decision that's made by the contracting officer, is it? It's made by the suspending and debarring official for the agency, but I'm not sure whether the contracting officer can also be the SDO in an agency or not. But the point is, is that the relating, the arising under a relating to language dates back, predates the CDA, that distinction. And as the court pointed out before, arising under gets to whether there's a specific relief granting clause in the contract, whereas relating to was, used to include the types of contract actions such as breach or reformation, for which there was no relief granting clause. Why is it necessarily limited to that? Why does it make any sense to say that when all other contract matters go to the boards and to the Court of Federal Claims, that you're going to separate out the performance evaluations and send them to district court under the APA? Why would Congress want to do that? Because that's the definition of relating to. The only point of relating to was to say, when the CDA was enacted, was to say that from here on out, the boards and the courts would have the same jurisdiction. But the point is, is that prior... Well, how can something that's entirely based on performance under a contract not relate to that contract? Because... That's what we're talking about here, right? The evaluations have no other meaning or relevance other than completely related to the performance under the contract. How can that not satisfy related to? Because relating to is a term of art, and under this Court's binding precedent in Paragon, relating to means a valid contract action, a contractual theory. And here, there's no contract theory. It's entirely regular... I don't believe Paragon is saying that. But the Paragon Act says, as does its progeny, that the CDA covers only, quote, claims based upon a valid contractual theory. And this is not a case that's a contractual theory at all. There's nothing about these performance evaluation regulations that's contractual. And in fact, the Court below recognized that problem, essentially conceding the point by going off on the Christian doctrine test in order to read the regulations into the contract. Because even the Court below understood that unless he could locate the regulations in the contract, there was not going to be a CDA claim here. And that's... Well, that seems to be conflating arising under and related to. It seems to be giving the same meaning to the two terms. No, I believe, Your Honor, that arising to would be an actual relief-granting clause. That is to say that even in a case where you have a breach claim that's based on an actual contract provision, that would be a relating to claim, not an arising under. An arising under claim would be like the changes clause or a default termination clause, where the clause itself calls out the nature of the relief or a price adjustment of some sort. But if you just have a breach of a promise, that is the classic type of relating to claim that previously could not be brought in the boards. And so it would have to go to the Court. And so what the Court does here is say, in any event, I have to have a valid contractual theory upon which to take CDA jurisdiction. And that's why the trial court below, at length, tries to get the regulation into the contract. But of course, if that were the case, then the entire FAR, presumably, is read in. And the court completely delimits, the trial court completely delimits what should be in the contract and what is not in the contract. And that's the problem with the debarment regs, because there are clauses, FAR clauses, that call for a debarment based on poor performance. But they don't result in decisions by the contracting office. The CDA is limited to situations where there's a contracting officer decision. And there is a contracting officer decision on the performance evaluation. It's different from debarment in that respect. Our view, of course, Your Honor, is that the CO is not issuing a decision under the CDA when he or she issues a performance evaluation. That's just one of their duties under the FAR clauses, under the FAR provisions governing performance evaluations. So it's not a section six decision by the contracting office? Right, it's not a- I didn't think you made that argument. We did not. I was thinking about that. But implicit in the notion that the CDA does not cover these claims is the notion that even if the CO issues a letter that looks like a decision, it's not a decision under the CDA. because this is not a CDA cause of action. But if the regulation is brought into the contract because the performance is related to the contract under Christensen, then wouldn't this be an action by the contracting officer that would come under the CDA? Well, yes, we agree. I believe that if the Christian doctrine is used to literally import the clause, the rather, it's not a clause, it's a reg. If the Christian doctrine is used to import the reg into the contract, such that it creates some obligation, contractual obligation of the government that's subject to a breach allegation, then yes, then there would be CDA jurisdiction. Now the court would still have to cross the next hurdle as to whether, even if the reg is in the contract, does it give a cause of action if it's not primarily intended to benefit the plaintiff? How could it possibly make sense to say that the contracting officer is going to deal with a delay claim in the contract and award relief on that? And that at the same time, he's going to consider whether that delay should lead to an adverse performance evaluation. And that his decision with respect to the delay claim goes to the Court of Federal Claims. And the decision with respect to the same issues, the same facts, goes to the district court. I mean, isn't there a possibility, indeed, of inconsistent results as a result of putting that appeal from the contracting officer's decision in two different places? Yes, but that's the same problem that would potentially result in a debarment, where you have a performance evaluation whose facts give rise to, as the court indicated, a decision on delay. Well, but except you don't have, in the debarment situation, the same government official making the decision. Here, it's the same official. It's the contracting officer making the decision with respect to the delay claim and with respect to the performance evaluation. You're going to say that the same decision by the same person is going to go to two different places. The CO, Your Honor, is just acting on behalf of the agency. So the agency decides to debar the contractor. The agency, acting through the CO, decides to issue liquidated damages decision. The CO, acting on behalf of the agency, issues a performance evaluation. And the same case could happen, where the contractor has to go to district court to resolve the debarment issue, has to go to the court of federal claims to resolve the liquidated damages issue. And it would be the same set of operative facts if, for example, you were- I don't think you're addressing the situation. The contracting officer does not make the debarment decision. And our response, Your Honor, is that the person who issues the decision cannot be dispositive here. These people, these are just agency employees who are assigned tasks. Now, it so happens that for some actions within the agency, those tasks are assigned to warranted contracting officials. For other tasks, they're assigned to the SDO, the suspending and debarring official. And like I said, I'm not sure that there's anything that precludes the SDO from being a warranted contracting officer on a project either. But the fact still remains that we're talking about actual, unlike the performance evaluation regulations, there are actual FAR clauses which deal with debarment. And those, even though they are in the contract, they're actual clauses as opposed to merely just standalone regulations, action under those FAR clauses in the contract don't go to the court of federal claims. It's an ADA issue in the district court. And that's what the trial court's decision then has a problem with it as a workability going forward, is that for any of these regulations that are arguably in the rubric of government contract regulations, no one will know what gives rise to a contract action and what is merely regulatory. The standard that the Court of Federal Claims articulated was, quote, whether the procurement regulation makes clear that it is intended to govern plaintiff's contract with no citation. And that's what this court dealt with in Agredano and Precision Pine, is not whether the regulations merely apply to the contractual circumstances in some nebulous way. That is insufficient. It has to be in the contract. And if it's not in the contract, then it's not actionable as a contract matter under the CDA. Now, whether there is some other jurisdiction elsewhere is for a different case. I would like to spend just a minute or two, if I could, on the dismissal that was discussed with appellant's counsel in terms of the 12B6 matter. And to make clear that it's not just a matter of the plaintiff's allegations being limited to delay and the failure of the subcontract. Weren't the allegations sufficient to say that the delay wasn't our responsibility, it was the government's fault, and therefore the performance evaluation in that respect was incorrect? And the problem there, Your Honor, is what I was getting to, is that the complaint never ties any of the unsatisfactory evaluations for particular elements to this disagreement about who is responsible for delay. I don't follow that. The form talks about delay, and it says the contractor didn't perform the work on time. The contractor in the complaint said it wasn't our fault, it was the result of the government. In paragraph, well, it's actually in paragraph 30 in the complaint at joint appendix at 114. There's a list of performance evaluation elements, areas A through O for the two buildings at issue. Quality of workmanship, implementation of the quality control plan, adequacy of the initial project schedule, adherence to the approved schedule, resolution of delays. And all of those, according to the complaint, were given an evaluation of unsatisfactory. But what the complaint never does is say that the particular performance evaluations it discusses were erroneous and resulted in these unsatisfactory evaluations. All the complaint does is say, hey, we had a bunch of problems with the government when we performed this contract. But they never say, because the government's unsatisfactory evaluation for item A would be different had the government correctly assessed some particular problem. That linkage is never made. The only thing- Say in paragraph 29, the paragraph that precedes that on JA113, Todd timely submitted its comments to the court, pointing out significant problems with the proposed unsatisfactory ratings on account of the delays which were caused by unforeseen events, none of which were his fault. Why isn't that sufficient? Actually, Your Honor, if I may quote exactly that, and from that paragraph at 29, I have it highlighted here too. It says, many of which were neither the fault nor the responsibility of Todd. And so the problem is, this can be true, and yet the court would not know whether any of the particular evaluations should be changed. The fact that a contractor says, I was accused of causing delay, some of it was my fault, some of it wasn't my fault, changed my evaluation, that doesn't follow from assuming that the fact is true. Well, maybe there was some delay. Let's assume- So you mean he has to say that all the delay was not my fault? The complaint has to plead facts that show that the unsatisfactory evaluation was due to erroneous assessment. Well, what's the answer to my question? Does he have to say in the complaint that every bit of the delay was not my fault? Is that the problem with the complaint here? He has to show, I mean, I don't know how much of it would- What's he supposed to allege? Is your view that he has to allege that every bit of the delay was not something which was my fault? For example, he would have to show, he would have to allege something along the lines of the government assessed that we were responsible for 50 days of delay and accordingly gave us an unsatisfactory evaluation for the 50 days of delay. In reality, we were responsible for none of it. Or something, something to connect the facts to the unsatisfactory evaluation. But here- So you're saying his pleading was not specific enough? That's correct, and that's exactly right. There were some insufficient factual allegations. Everything that the plaintiff says here can be true, and it does not follow from the facts alleged that any particular unsatisfactory evaluation should be changed. Well, if the allegation in paragraph 29 is true, then some of the delay was not the contractor's fault. But the fact that some of the delay- Does that have an effect? No, not in and of itself. We don't know from these facts as a result. Even if you assume it's true that some of the delay was not its fault, that does not follow from there that the unsatisfactory rating is necessarily wrong. Just because some of the delay isn't their fault. You have to plead- He has to say that none of it was his fault. Depending on the total factual circumstances, but yes. He has to say that the unsatisfactory rating is wrong, is arbitrary and capricious because- Now, I don't know, Your Honor, whether or not if they made out a pleading that says we were assessed unsatisfactory because the agency erroneously assessed 50 and it was really only one. I don't know where that line was, but they are nowhere near that tough call. They don't tie the alleged problems in the performance of the contract to any of the actual evaluations. Even if the complaint is viewed in a light most favorable to the contract? Correct, because the court below correctly said, even if I assume that all of these facts are true, and it's really a simple matter. Let's assume no one had responded to this complaint at all. And the court is looking at it for the first time and saying, okay, assuming that none of these facts, as alleged, were disputed, what relief would I give? And putting aside the whole declaratory and injunctive problem, let's say the court could actually go in and change the evaluation. What would they change? Would they change E, F, G? So to what, from unsatisfactory to satisfactory or to excellent? No idea. And there's no facts here that suggest that simply because, even if we assume that many of the days of delay were not the responsibility of Todd, that does not lead to the conclusion that the grade should change. It's the same thing, Your Honor, if I may, as if your number grade in a course goes from 83 to 86. It's still a B. Final point? Your Honor, we respectfully request that you affirm the decision below, but dismissing the complaint for lack of jurisdiction. All right, thank you. Mr. Laws. Thank you, Your Honor. There has to be a remedy for contractors who are saddled with unsatisfactory ratings by the government. There has to be a remedy, Your Honors. Without a remedy- What about the government's last point? They're basically saying, well, you adequately allege that some of the delay wasn't your fault, but if any of it was your fault, the unsatisfactory performance evaluation stands. Well, I want to respond to that as gentlemanly as I should as an officer of the court. But I'm not sure how to do it. I mean, that's just ridiculous, Your Honor. I mean- That's your only answer to it? No, Your Honor. The point here about this case is that we were never given an opportunity to present our case. The government complains that we never linked- There's no quantification of a delay in the performance evaluation. It says you delayed. So if you delayed for two weeks as opposed to two months, does it make any difference as to the outcome? It makes a huge difference. And those are the facts that we should have been allowed to develop. Why? I mean, the performance evaluation doesn't quantify the delay, does it? That's part of the reason why it's extremely hard to plead this type of case. There is no rigid, you've got 100 days of delay, and 50 of them were caused by this issue, and 25 by this issue, and so on and so forth. But I do have a performance evaluation at JA 035, which says, contractor failed to submit a schedule until February 6, 2004. I've got an amended complaint that says I was given a woefully inadequate design by the government, which did not comply with current code requirements, which was the cause for that delay. I have alleged facts which are linked to the relief that we are requesting, to the harm that we are alleging. Now, I admit, I'm probably not the sharpest attorney in this entire courtroom, but I know enough to tell you, your honors, that all I've got to do is get a short and plain statement of what's occurred. And then after I reach that threshold requirement, I am then allowed to present evidence for a decision on the merits. That did not happen here. Contractors should be afforded the right to challenge unsatisfactory performance ratings. And with that, your honors, unless there's another question, I think I'll close. All right, thank you very much, Mr. Laws. Humility is a fine characteristic, but you don't need to sell yourself short. We thank counsel for both sides. The case is submitted. Thank you, your honor.